IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOHN HENRY JONES,
      Petitioner,

vs.                             Case No.:  4:15cv12/MW/EMT

DEPARTMENT OF CORRECTIONS
and FLORIDA COMMISSION ON OFFENDER REVIEW,
      Respondents.
_____/

**REPORT AND RECOMMENDATION**

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent Florida Commission on Offender Review ("FCOR") filed an answer (doc. 8).[1]  Petitioner filed a reply (*see* doc. 11).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      Petitioner was charged in the Circuit Court in and for Brevard County, Florida, Case No. 87-CF-4645, with first degree murder (doc. 1-1 at 50).[2]  On November 4, 1987, Petitioner entered a written plea agreement with the State, pursuant to which Petitioner agreed to plead guilty to the

---

[1] The Department of Corrections filed a Limited Response acknowledging that it has been properly named as a respondent, but stating that because Petitioner's habeas petition challenges only the actions of the FCOR, it defers to the FCOR's response to the petition (*see* doc. 9).

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

charge and to testify truthfully against a co-defendant, and the State agreed to waive the death penalty and to "stand mute" on the issue of whether Petitioner's sentence would run consecutive to or concurrent with his sentence on other charges (*id.* at 38–40).  By signing the plea documents, Petitioner expressly acknowledged his understanding that if he pleaded guilty (1) the maximum possible sentence he could receive was life imprisonment, (2) the sentence was "up to the Court only," and (3) the mandatory minimum penalty for the charge was 25 years in prison (*id.*).  The court accepted the plea (*id.* at 37).  The trial court adjudicated Petitioner guilty of first degree murder and sentenced him to prison for a term of natural life, with a requirement that he serve no less than 25 years before becoming eligible for parole (doc. 8, Ex. B).  Additionally, the court ordered Petitioner's sentence to run concurrently with any active sentence he was serving (*id.*).

Petitioner was also charged with first degree murder in the Circuit Court in and for Indian River County, Florida, Case No. 87-CF-32 (doc. 1-1 at 58).  He pleaded guilty to the charge, and on January 10, 1989, the court adjudicated him guilty and sentenced him to  prison for a term of natural life, with a mandatory minimum sentence of 25 years (doc. 8, Ex. A).  The court ordered Petitioner's sentence to run concurrently with his sentence in Brevard County Case No. 87-CR-4645 (*id.*).

Petitioner received an initial presumptive parole release date ("PPRD") interview with the FCOR on April 20, 2011 (doc. 8, Ex. C).  The hearing examiner recommended a PPRD of January 16, 2047 (*id.*).  The examiner calculated Petitioner's PPRD as follows:

Salient Factor Score:  1=<u>1</u>, 2=<u>1</u>, 3=<u>2</u>, 4=<u>1</u>, 5=<u>0</u>, 6=<u>0</u>, 7=<u>0</u>.  TOTAL <u>5</u>, or RCF ___.

Offense Severity:  Level 6 Degree Capital Felony Offense <u>First Degree Murder</u> Case No. <u>87-004645</u>.

| | |
|---|---|
| Matrix Time Range: <u>240 to 300</u>. | Top Of Range 300 |

Aggravating/Mitigating Factors:

| | |
|---|---|
| Indian River County 87-000032, First Degree Murder - Life, 25 years MM, concurrent (J & S) | +300 |
| Use of firearm:  Inmate killed victim by shooting him with a handgun. (Information - 87-000032) | +60 |
| Use of dangerous weapon:  Inmate killed victim by stabbing him with a knife. (Information - 87-004645) | +60 |

Time Begins:  <u>01/16/1987</u>

Months Recommended:  <u>720</u>

Recommended Presumptive Parole Release Date:  <u>01/16/2047</u>.

(Ex. C).

At the FCOR's meeting on June 29, 2011, the Commission did not affirm the hearing examiner's recommended PPRD and restructured Petitioner's case as follows:

Salient Factor Score:  1=<u>1</u>, 2=<u>1</u>, 3=<u>2</u>, 4=<u>1</u>, 5=<u>0</u>, 6=<u>0</u>, 7=.  TOTAL <u>5</u>, or RCF ___.

Offense Severity:  Level <u>6</u> Degree <u>Capital Felony</u> Offense <u>First Degree Murder</u> Case No. <u>87-004645</u>.

Matrix Time Range:  <u>240-300.</u>                                    Set at the top 300 months

<u>Aggravating</u>/Mitigating Factors:

1.  The offense behavior in Case #87-0046[45]CFA involved the use of a deadly weapon;
to wit, a knife, per the Post [sic] Sentence Investigation.                    +60 months

2.  Case #87-32, First Degree Murder                          +300 months

3.  The offense behavior in Case #87-32 involved the use of a firearm,
to wit, a .34 caliber handgun, per the PSI                          +60 months

4.  The offense behavior in Case #87-32 and Case #87-004645CFA involved a murder for hire;
to wit per the PSI, the inmate states he was offered $500.00 in cocaine and $1,000.00 in cash
to kill each victim; per the PSI, the inmate's statement, Rationale and the Admission Classification
Summary                                          +300 months

5.  The inmate has a documented history of substance abuse and was under the influence
at the time of the offense per the PSI and the Admission Classification Summary.        +60 months

6.  The inmate has amassed a record of unsatisfactory institutional conduct as evidenced by
his processed disciplinary record which is a negative indicant of parole prognosis.      <u>+30 months</u>

                                          Total of  1,110 months

Time Begins:  <u>1/16/1987</u>.

Months for Incarceration:  <u>1,110</u>.

(Ex. C).  The FCOR set Petitioner's PPRD as July 16, 2079 (*id.*).  Petitioner was notified he would be interviewed again in February of 2018 (*id.*).  Petitioner sought administrative review of the FCOR's decision, but the FCOR did not change his PPRD or the date of his next parole interview (Ex. D).

Petitioner sought judicial review of the FCOR's decision by filing a petition for writ of mandamus in the Circuit Court in and for Leon County, Florida, arguing that the FCOR violated his Fourteenth Amendment rights to due process and equal protection by rejecting the hearing examiner's recommendation that his PPRD be set at January 16, 2047, and instead extending it to July 16, 2079 (doc. 1-1 at 26–31).  Petitioner contended that the FCOR's decision exceeded the sentences set forth in the plea agreement(s) and imposed by the courts, namely life sentences with a 25-year mandatory minimum and eligibility for parole upon serving 25 years (*id.*).  The state court summarily denied the petition in an order issued September 20, 2013 (doc. 8, Ex. E).  Petitioner appealed the decision to the Florida First District Court of Appeal ("First DCA"), Case No. 1D13-5742, by filing a petition for writ of certiorari.  The First DCA denied the petition on the merits on May 30, 2014 (doc. 1-1 at 20).  Jones v. Fla. Parole Comm'n, 141 So. 3d 184 (Fla. 1st DCA 2014) (Table).  The mandate issued July 24, 2014 (*id.* at 22).  Petitioner filed a notice to invoke the discretionary jurisdiction of the Supreme Court of Florida, Case No. SC14-1524 (*id.* at 23).  The state supreme court dismissed the case for lack of jurisdiction on August 5, 2014 (*id.* at 24).  Jones v. Fla. Parole Comm'n, 148 So. 3d 771 (Fla. 2014) (Table).  Petitioner filed a petition for writ of certiorari in the United States Supreme Court, No. 14-6310 (*id.* at 25).  The Court denied the petition on November 17, 2014 (*id.*).  Jones v. Fla. Parole Comm'n, 135 S. Ct. 685 (2014) (Mem).

Petitioner filed the instant federal habeas action on January 15, 2015 (*see* doc. 1).

## II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]   The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.   Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."   Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).   In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."   <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).   The law is "clearly established" if Supreme

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).   The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf*. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or

unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 562 U.S. at 102; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal

court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III. PETITIONER'S CLAIM

Ground One: "Florida Parole Board has violated Petitioner's substantive and procedural due process rights of the 14th Amendment by not honoring the state trial court judges' of the 18th and 19th [Judicial Circuits], along with all state attorneys' and Petitioner's binding agreement thru [sic] plea/contract that Petitioner would serve a minimum mandatory of serving [sic] 25 years on all sentences, and judgments ran concurrent with Brevard County of the 18th Judicial Circuit with Indian River of the 19th Judicial Circuit, both for 1st degree murders has [sic] resulted in a 'manifest of justice' to [sic] a 'miscarriage of justice.'"

Petitioner contends the FCOR, as a state agent, reneged on the terms of the plea agreements between Petitioner and the State Attorney's Offices, and exceeded the sentences imposed by the trial courts, which Petitioner asserts required that he be released on parole upon serving the 25-year mandatory minimum (doc. 1 at 5–6; *see also* doc. 11). Petitioner seeks specific performance of the plea agreements, which he contends is immediate release on parole (*id.*).

Case 4:15-cv-00012-MW-EMT   Document 13   Filed 06/16/15   Page 9 of 14

Page 9 of  14

The FCOR appears to concede that Petitioner exhausted his claim in the state courts (doc. 8 at 3).  The agency contends Petitioner has no liberty interest in parole release prior to expiration of his life sentences; therefore, he failed to demonstrate the FCOR violated his due process rights in establishing his PPRD (*id.* at 5–8).

A.      Clearly Established Federal Law

To establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty interest created by the Constitution or by a state.  *See* <u>Am. Mfrs. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999); <u>Monroe v. Thigpen</u>, 932 F.2d 1437, 1441 (11th Cir. 1991).  In <u>Greenholtz v. Inmates of Neb. Penal and Corr. Complex</u>, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), the Supreme Court held that there is no constitutional or inherent right to parole, and that administrative decisions, however serious their impact, do not automatically invoke due process protection.  *Id.*, 442 U.S. at 7; *see also* <u>Monroe</u>, 932 F.2d at 1441.  The Eleventh Circuit has ruled that Florida statutes do not create a liberty interest in parole, because the decision whether to release an inmate on parole is a matter committed to the discretion of the parole commission without the mandate of statute.  *See* <u>Staton v. Wainwright</u>, 665 F.2d 686 (5th Cir. Unit B 1982).[4]  As the court in <u>Staton</u> explained:

> Much of the Florida statutory scheme [concerning parole] is written in mandatory terms.  That language, however, is qualified by the exercise of the Commission's discretion.  The setting of the presumptive parole release date and the decision whether that date is to become the effective parole release date are matters committed ultimately to the discretion of the Commission.  Even if the inmate's conduct has been satisfactory, Florida law specifically grants the Commission the power to authorize the effective parole release date or to deny or delay release.
>
> Since the decision whether to release an inmate on parole is a matter committed to the discretion of the Commission without the mandate of statute, no entitlement to or liberty interest in parole is created by the Florida statutes.

*Id.* at 688; *see also* <u>Hunter v. Fla. Parole & Prob. Comm'n</u>, 674 F.2d 847, 848 (11th Cir. 1982) ("The former Fifth Circuit has held . . . that no liberty interest in parole was created by the Florida statutes. We agree.") (citing <u>Staton</u>); <u>Jonas v. Wainwright</u>, 779 F.2d 1576, 1577 (11th Cir. 1986) (reiterating

---

[4] The Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions issued prior to October 1, 1981, and all former Fifth Circuit Unit B decisions issued after October 1, 1981.  *See* <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc); <u>Stein v. Reynolds Sec., Inc.</u>, 667 F.2d 33, 34 (11th Cir. 1982).

Case No.:  4:15cv12/MW/EMT

that "[t]here is no constitutional right to parole in Florida.").  Likewise, the FCOR's setting of a PPRD does not implicate a liberty interest or invoke due process protection.  *See* <u>Damiano v. Fla. Parole and Prob. Comm'n</u>, 785 F.2d 929, 932 (11th Cir. 1986); <u>Hunter</u>, 674 F.2d at 848 (holding that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated prisoner's PPRD); *see also, e.g.*, <u>Rodriguez v. Fla. Parole Comm'n</u>, No. 3:09cv79/LAC/CJK, 2011 WL 7068984, at *3 (N.D. Fla. Dec. 5, 2011) (unpublished) (same), *Report and Recommendation Adopted by* 2012 WL 170878 (N.D. Fla. Jan. 20, 2012) (unpublished); <u>Walker v. Fla. Parole Comm'n</u>, 299 F. App'x 900 (11th Cir. 2008) (unpublished) ("There is no liberty interest in the calculation of Florida's 'presumptive parole release date,' . . . because the ultimate parole decision is a matter of Commission discretion.").  "Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness."  <u>Slocum v. Ga. State Bd. of Pardons and Paroles</u>, 678 F.2d 940 (11th Cir. 1982); <u>O'Kelley v. Snow</u>, 53 F.3d 319, 321 (11th Cir. 1995) (same).

Although the Eleventh Circuit once found that a state parole board's admitted use of false information was arbitrary and capricious, and thus violated the Due Process Clause, *see* <u>Monroe</u>, 932 F.2d at 1442, the Eleventh Circuit has since clarified that "prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim.  Without evidence of the Board's reliance on false information, a prisoner cannot succeed."  <u>Jones v. Ray</u>, 279 F.3d 944, 946 (11th Cir. 2001).  *Compare* <u>Jones</u>, 279 F.3d at 946 (holding that district court properly dismissed prisoner's due process claim asserted in civil rights complaint, because prisoner did not come forward with any false information relied on by the Board), *and* <u>Thomas v. Sellers</u>, 691 F.2d 487 (11th Cir. 1982) ("[A]bsent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."), *and* <u>Slocum</u>, 678 F.2d at 941 (holding that prisoner did not state due process claim by simply asserting the parole board considered erroneous information or inaccurate reports during parole consideration); *with* <u>Monroe</u>, *supra*, and <u>Damiano</u>, 785 F.2d at 932 (finding that inmate "raised a colorable due process claim with respect to the use of procedurally flawed disciplinary reports in modifying a PPRD").

The clearly established federal standard applicable to claims of breached plea agreements is set forth in <u>Santobello v. New York</u>, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262.  The Supreme Court outlined two remedies available to rectify the government's breach of a plea agreement: (1) rescission of the agreement, that is, withdrawal of the guilty plea; or (2) specific performance of the agreement, "in which case petitioner should be resentenced by a different judge."  404 U.S. at 263; see also Puckett v. United States, 556 U.S. 129, 137, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009).  "[A] breach does not cause the guilty plea, when entered, to have been unknowing or involuntary.  It is precisely because the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain." Puckett, 556 U.S. at 137–38 (emphasis in original).

B.     Federal Review of State Court Decision

Petitioner raised his due process claim in his mandamus petition filed in the state circuit court (see doc. 1-1 at 26–31).  The state circuit court adjudicated the claim as follows:

> . . . Plaintiff has failed to demonstrate a due process violation, other violation of law warranting relief, or abuse of discretion.  Plaintiff has no legitimate reasonable expected liberty interest in parole and hence no Fourteenth Amendment right to parole has been violated.  There is no constitutional right to parole in Florida. Cochran v. State, 476 So. 2d 207, 208 (Fla. 1985); Hunter v. Florida Parole & Probation Commission, 674 F.2d 847, 848 (l1th Cir. 1982).  As the Eleventh Circuit U.S. Court of Appeals held in rejecting an inmate's 1983 action concerning the extension of a PPRD, "we have concluded that Florida's parole system, which is qualified by the exercise of the FPC's discretion, creates no legitimate expectation of parole.  Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir. 1986).  So, because Tooma had no legitimate expectation of parole, no basis existed for a due process claim even if the FPC abused its discretion."  Tooma v. David, Case No. 09-12396 (11th Cir. June 10, 2010).  See also Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir. 1986).  A PPRD is presumptive, not a guarantee of parole.  May v. Florida Parole and Probation Commission, 424 So. 2d 122, 124 (Fla. 1st DCA 1982) ("presumptive parole release date is only presumptive.  It is discretionary prologue to the Commission's final exercise of its discretion in setting an inmate's effective parole release date.  Section 947.18, Florida Statutes, which was in effect at all times pertinent to this case, gives the Commission ultimate discretion to decide when to parole an inmate even though his presumptive parole release date may indicate an earlier date.")  Jordan v. Florida Parole and Probation Comm'n, 403 So. 2d 591 (Fla. 1st DCA 1981) (a PPRD is "presumptive" only and does not convey any right to release).

Finally, neither the Commission's imposition of the aggravating factors in this case nor the decision to reject the hearing examiner's recommended PPRD setting increased the term of Plaintiff's sentence beyond 25 years. Plaintiff was not just sentenced to 25 years in prison, he was sentenced to LIFE in prison with a minimum mandatory of 25 years in case number 87-32, and LIFE for case number 87-4645. As such, he would not even be eligible for parole before the 25 year minimum mandatory part of his sentence has been served, but this by itself does not guarantee him release on parole after service of 25 years in prison. (See FPC's Exhibits A, D, E); Wilkinson v. State, 889 So. 2d 110 (Fla. 2d DCA 2004) (minimum mandatory 25 year sentence required before becoming parole-eligible); Holston v. FPPC, 394 So. 2d 1110 (Fla. 1st DCA 1981) (Commission can properly set a PPRD so distant as to be beyond life expectancy for inmate if inmate's criminal history so warrants).

Plaintiff has failed to demonstrate that the Parole Commission abused its discretion or violated the law. Baker v. Florida Parole and Probation Commission, 384 So. 2d 746, 748 (Fla. 1st DCA 1980) (holding that absent a violation of a statute or rule, the court may not review the matter any further because a writ of mandamus will not lie in any review of discretionary acts). Consequently, mandamus relief must be denied.

(doc. 8, Ex. E at 57–58). The First DCA denied Petitioner's petition for review on the merits (*id.* at 62).

The plea documents submitted by Petitioner demonstrate that in Case No. 87-CF-4645 Petitioner entered a written plea agreement with the State, the terms of which were that Petitioner would plead guilty to first degree murder and testify truthfully against a co-defendant, and the State would to waive the death penalty and "stand mute" on the issue of whether Petitioner's sentence would run consecutive to or concurrent with his sentence on other charges (doc. 1-1 at 37–40). The plea documents include no promise by the prosecutor that Petitioner would be released on parole after serving 25 years in prison. Further, by signing the plea documents, Petitioner expressly acknowledged his understanding that if he pleaded guilty (1) the maximum possible sentence he could receive was life imprisonment, (2) the sentence was "up to the Court only," and (3) the mandatory minimum penalty for the charge was 25 years in prison (*id.*). The plea documents thus refute Petitioner's assertion that the terms of the plea required that he be released on parole after serving 25 years in prison. The judgment and sentence in each criminal case reflect that the court

sentenced Petitioner to life imprisonment, and required that he serve no less than 25 years before becoming eligible for parole (*id.* at 41–44, 55–57).[5]

In reviewing the FCOR's decision, the state court interpreted Petitioner's sentences under Florida law and determined that Petitioner was not eligible for parole prior to serving 25 years in prison, but that even after service of 25 years, he was not guaranteed release on parole.  This court must abide by the state court's interpretations of state law.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Under Florida law, the offense for which Petitioner was sentenced in both cases (i.e., first degree murder) was designated a capital felony (*see* doc. 1-1 at 37–43, 55–57), and at the time of Petitioner's offense conduct, plea, and sentencing, the Florida Legislature designated a capital felony as punishable by death or life imprisonment without the possibility of parole for 25 years.  *See* Fla. Stat. §§ 782.04(1), 775.082(1)(a) (effective prior to May 25, 1994). Prior to Petitioner's serving 25 years in prison, the FCOR considered the possibility of paroling him, which is all that the criminal judgments and state statutes required—neither the sentencing courts nor the criminal statutes applicable to Petitioner's offenses required that he be released on parole upon serving 25 years of his concurrent life sentences.

Petitioner failed to demonstrate that the FCOR's establishing his PPRD as July 16, 2079, violated the terms of a plea agreement or unconstitutionally increased either of his sentences. Moreover, Petitioner does not allege the FCOR admittedly used false information in establishing his PPRD.  Therefore, his due process challenge to the establishment of his PPRD date is without merit.

In sum, Petitioner failed to demonstrate that the state court's adjudication of his constitutional challenge to the FCOR's establishment of his PPRD was based upon an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of clearly established federal law.  Therefore, Petitioner is not entitled to federal habeas relief.

## IV.     CERTIFICATE OF APPEALABILITY

---

[5] Petitioner requests that the court compel Respondents to file a transcript of each sentencing proceeding (*see* doc. 11 at 1).  However, he does not allege that the written judgments filed with this court contain any material variances from the oral pronouncements of the sentencing courts.  Therefore, he failed to show that the transcripts are necessary to this court's disposition of his claim.

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of June 2015.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**